**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| AMAZING FISHSTORE LLC d/b/a KRMS FARMS and WILDER MEDIA CT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>TD BANK, N.A.,<br><br>        Defendant. | No. 1:22-CV-00958-KMW-AMD |

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Amazing Fishstore LLC d/b/a KRMS Farms and Wilder Media CT hereby move for final approval pursuant to the Court's Order granting Preliminary Approval (ECF No. 94), Federal Rule of Civil Procedure 23, and Third Circuit precedent.

## INTRODUCTION

The Court previously granted preliminary approval of the Settlement reached by the parties and also approved the proposed notice program. *See* ECF No. 94. Notice has been disseminated to the potential members of the Settlement Classes as directed by the Court. By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.

As previously reported, the Settlement is the product of years of hard-fought litigation and arm's length negotiations involving complex and challenging factual and legal issues. It follows motion practice and discovery conducted by the parties. And, most importantly, it will provide valuable monetary benefits to customers of Defendant TD Bank, N.A. ("TD" or "Defendant") who (1) were assessed one or more overdraft fees for debit card transactions that

were authorized at a time when a customer's available balance in their checking account was positive, but later paid by the Bank when the account's available balance was insufficient to cover the transaction(s), and/or (2) were assessed more than one overdraft or NSF fee on the same item.

Pursuant to the Settlement, TD has agreed to provide $15,500,000.00 as compensation to the Settlement Classes. This includes a $10,500,000.00 Settlement Payment Amount[1] in cash, which includes all monetary disbursements incurred in connection with the Settlement Agreement, including but not limited to (a) all monetary payments to the Settlement Classes; (b) all Administrative Costs; (c) all attorneys' fees, costs, and expenses awarded by the Court to Class Counsel; and (d) all Service Awards awarded by the Court to the Class Representatives. *See* Settlement Agreement, ¶ 62 (Exhibit 3 to ECF No. 89-2). It also includes $5,000,000.00 in the form of reductions to the outstanding balances of those members of settlement classes whose Accounts were closed with amounts owed to TD Bank ("Overdraft Forgiveness Amount"). *See* Settlement Agreement, ¶ 63. In addition, as noted in the Settlement, TD has discontinued the challenged "APSN" and "Retry" fee practices – changes that the parties estimate will save accountholders tens of millions of dollars in future years.

By any objective measure, the Settlement presented for the Court's consideration is fair, reasonable, and adequate. Moreover, the Settlement provided for a robust Notice Program, including direct, individual notice to the potential members of the Settlement Classes. The Notice Program has been implemented by the Settlement Administrator in accordance with this Court's Order granting Preliminary Approval. *See* Declaration of Edward Dattilo ("Dattilo Decl.") (ECF No. 97-2) at ¶¶ 7-22.

---

[1] All capitalized terms used herein have the same means as set forth in the Settlement Agreement.

The reaction of the Settlement Classes thus far has been very positive, further supporting the conclusion that the Settlement is fair, reasonable, and adequate. Direct notice has been provided to the potential members of the Settlement Classes via mail and email. The deadline to opt-out or object was September 14, 2024. As of September 24, 2024, no members of the Settlement Classes have opted-out and only *one* objection have been submitted. For the foregoing reasons and others detailed below, the Settlement meets the standards for final approval and should be approved.

## CASE HISTORY

A full recitation of the history of the case is set forth in the papers filed in support of Preliminary Approval. *See* Plaintiffs' Motion and Memorandum of Law for Preliminary Approval, pp. 3 ("Litigation History"), 4 ("Settlement Negotiations") (ECF No. 89-1); *see also* Joint Declaration of Counsel, ¶¶ 5-27 ("Joint Decl.") (ECF No. 89-2). Details of the case relating directly to this motion, including the efforts of Class Counsel and the Class Representatives are set forth therein.

## ARGUMENT

Pursuant to Rule 23(e), a class action settlement must be approved by a court before it can become effective. The process for court approval is comprised of two principal steps:

(1)    Preliminary approval of the proposed settlement and direction of notice to the class; and

(2)    A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

In granting preliminary approval of the Settlement and directing that notice be disseminated to the potential members of the Settlement Classes, the Court took the first step in the process. Moreover, as summarized above, the Settlement Administrator has (and continues to) implement the Notice Program as directed by the Court. *See generally* Dattilo Decl. (ECF No. 97-2). By

this motion, Plaintiffs respectfully request that the Court take the final step by granting final approval of the Settlement.

Preliminary approval required the Court to determine that it would "likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Nothing has since undermined this Court's initial findings that final approval would be likely; in fact, the positive reaction of the Settlement Classes has further substantiated the Court's initial conclusions and further supports final approval.

## I. SETTLEMENT OF THE CLASS ACTION.

### A. The Settlement Classes.

Plaintiffs seek approval of the following nationwide classes, for settlement purposes only:

All holders of a TD Bank business checking account, who from February 23, 2016 to and including September 30, 2022, incurred one or more overdraft fees for a debit card transaction that was authorized at a time when the account's available balance was positive, but later paid by the Bank when the account's available balance was insufficient to cover the transaction ("APSN Fee Class"). and

All holders of a TD Bank business checking account, who from February 23, 2016 to and including September 30, 2022, incurred more than one overdraft fee or NSF fee on a debit transaction that was returned unpaid by the Bank due to insufficient funds and subsequently re-submitted by a merchant or other third party for payment and returned unpaid or paid into overdraft ("Retry Fee Class").

Settlement Agreement, ¶ 58. Excluded from the Settlement Classes are TD; all Settlement Class members who exclude themselves from the Settlement, and all judges assigned to this litigation. *Id.* at 59.

### B. Cash Payment

Under the proposed Settlement Agreement, TD Bank shall pay $10,500,000.00 as monetary compensation to the APSN Fee Class and Retry Fee Class ("Settlement Payment Amount"). This settlement payment is inclusive of all monetary payments to the two classes, all

4

fees, costs, charges, and expenses of Notice and administration of the Settlement, all attorneys' fees, costs, and expenses awarded to Class Counsel (subject to this Court's approval), and all Service Awards to the Class Representatives for their work on behalf of the class. *See* Settlement Agreement, ¶ 62.

### C.    Debt Reduction

In addition to the cash component of the Settlement, TD Bank shall also provide $5,000,000.00 in the form of reductions to the outstanding balances of those members of the Settlement Classes whose Accounts were closed with amounts owed to TD Bank ("Overdraft Forgiveness Amount"). *See* Settlement Agreement, ¶ 63. Specifically, the Overdraft Forgiveness Amount shall serve to reduce the amounts that members of the Settlement Classes owe TD Bank for APSN Fees, Retry Fees, and overdrafts the Bank paid but for which the Bank was not reimbursed. *Id.*

### D.    Distribution of Net Settlement Fund

The Net Settlement Fund is equal to the Settlement Payment Amount plus any interest earned from the instruments or accounts into which the monetary settlement is deposited, and less the (a) amount of the Court-awarded attorneys' fees, costs, and expenses to Class Counsel; (b) Court-awarded Service Awards to the Plaintiffs; (c) costs of Notice and administration of the Settlement, including a reservation of a reasonable amount of funds for prospective costs of administration including tax administration; and (d) all other necessary costs and/or expenses as permitted by the Settlement Agreement. *See* Settlement Agreement, ¶¶ 26, 62.

After complying with the procedures set out in the Settlement and summarized below, every Participating Settlement Class Member shall be paid from the Net Settlement Fund on a *pro-rata* basis using calculations performed by the Settlement Administrator and TD Bank's

expert as confirmed by Plaintiffs and their expert. *See* Settlement Agreement, ¶¶ 97-98. Settlement Fund Payments to current TD account holders will be made by a credit to their TD accounts. *Id.* at ¶ 99(a). Settlement Fund Payments to past account holders will be made by check and will be sent to the address that the Settlement Administrator identifies as valid. *Id.* at ¶ 99(b). Checks shall be valid for 120 days. *Id.* For jointly held accounts, checks will be payable to all account holders, and will be mailed to the first account holder listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable, and will re-mail it to the updated address, or, in the case of a jointly held account, to an account holder other than the one listed first. *Id.*

### E.    Change in Conduct

In September 2023, almost two years after Plaintiffs filed this action, Defendant discontinued assessing Overdraft Fees for business checking accounts for debit card transactions that were authorized at a time when the account's Available Balance was positive. *See* Joint Decl., ¶ 24. TD Bank also discontinued charging Retry Fees for business checking accounts. *Id.* at ¶ 26. Although these changes in conduct were not a negotiated part of this Settlement Agreement, they are almost certainly a result of this litigation. *Id.* at ¶ 27.

### F.    The Release Provisions

In exchange for the consideration described above, Plaintiffs and Participating Settlement Class Members agree to release Defendant and its present and former parents, subsidiaries, divisions, affiliates, and other specified related parties from any and all liabilities, rights, claims, actions, causes of action, and other specified remedies, that constitute, result from, arise out of, are based upon, or relate to any of the claims that were or could have been asserted in the Action.

The full text of the proposed releases is set forth in the Settlement Agreement.  *See* Settlement Agreement, ¶¶ 108-09.

G.      **Attorneys' Fees, Expenses, and Class Representative Service Awards.**

The parties and their counsel did not discuss the provisions regarding attorneys' fees or service awards for the Class Representatives until after they had already agreed upon the terms of the Settlement Agreement in principle, and substantive elements of the Settlement Agreement had been negotiated.  Pursuant to the terms of the Settlement Agreement, Class Counsel submitted a Fee and Expense Application to the Court.  *See* ECF No. 97, p. 1-2 (requesting a fee of thirty percent (30%) of the total settlement value and reimbursement of $45,884.25 in out-of-pocket litigation costs and expenses).  TD has the right to oppose Class Counsel's request for attorneys' fees should it feel the request is inconsistent with precedent from the Third Circuit and this Court.  *See* Settlement Agreement, ¶ 114.

On behalf of the two Class Representative individuals, Class Counsel requested Service Awards not to exceed the total amount of $10,000.  *See* ECF No. 97, p. 2-3.  Each of the two Class Representatives would receive $5,000 each.  *Id.*  The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees or Service Awards shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination.  *See* Settlement Agreement, ¶¶ 114, 116.

II.      **NOTIFICATION TO THE CLASS AND RESPONSE OF CLASS MEMBERS.**

On May 17, 2024, the Court entered an order finding that the proposed Settlement is within the range of reasonableness for approval, provisionally certifying the Settlement Classes, appointing Amazing Fishstore LLC d/b/a KRMS Farms and Wilder Media CT as Class Representatives, and appointing Webb, Klase & Lemond, LLC and KalielGold PLLC as Class

Counsel.  *See* ECF No. 94.  In that same Order, the Court also set a fairness hearing for October 10, 2024 at 11:00 a.m., appointed Epiq Systems, Inc. ("Epiq") as the Settlement Administrator, and authorized notice to the potential members of the Settlement Classes.  *Id.*[2]

In accordance with the Court's Preliminary Approval Order, emailed and mailed notice was sent to over 200,000 individuals and a Settlement Website (https://www.tdbankbusinessaccountclassaction.com) was created to give Notice Recipients access to case-related documents such as the Settlement Agreement, the Preliminary Approval Order, the Long-Form Notice, Postcard Notice, and the Motion for Attorneys' Fees and Service Awards.  *See* Supplemental Declaration of Edward Dattilo, ¶¶ 3-5 ("Supp. Dattilo Decl.") (Exhibit 1 hereto). The Court-approved Notice Program provided a summary of the litigation, a summary of the proposed Settlement, and detailed information to the potential members of the Settlement Classes regarding their rights and options in relation to the proposed Settlement.  Class Counsel and/or Epiq have received and responded to hundreds of phone calls and email inquiries from Notice Recipients.  To date, the Settlement Administrator has emailed and mailed over 200,000 notices, and no businesses have requested to be excluded.  One objections have been filed with the Court.  *Id.* at ¶¶ 7-8.

## III.    THE SETTLEMENT SATISFIES REQUIREMENTS FOR FINAL APPROVAL.

Before granting final approval, the Court should determine whether to certify the Settlement Classes, and then assess whether the terms of the settlement are fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e).  *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013) ("in addition to determining whether a proposed settlement is 'fair, reasonable, and adequate, district courts must ensure that each of Rule 23(a)'s requirements,

---

[2] By a subsequent order of the Court, the Final Approval Hearing was rescheduled for October 15, 2024 at 10:00 am.  *See* ECF No. 96.

including commonality, is satisfied before certifying a class and approving a class settlement agreement'") (quoting Fed. R. Civ. P. 23(e)).  The Court should also make final its determination in the Preliminary Approval Order that the Notice Program constituted due, adequate, and sufficient notice to all persons entitled to receive notice and that the class members received adequate notice of the Settlement.  *See* Fed. R. Civ. P. 23(c)(2)(B).  As set forth below, these requirements are readily satisfied here.

### A.    The Settlement Meets the Requirements of Rule 23.

Plaintiffs seek certification of the Settlement Classes pursuant to Rule 23.  "For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)."  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010), *rev'd on other grounds*, *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012).  The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy.  In addition, Plaintiffs seek certification of the Settlement Classes pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."  Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met for settlement purposes.

### 1.    Numerosity Under Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met."  *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001); *Zinberg v. Washington*

*Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity"). Here, notices were emailed and mailed to over 200,000 potential members of the Settlement Classes. *See* Supp. Dattilo Decl., ¶¶ 3-4. Numerosity is therefore easily satisfied.

### 2. Commonality Under Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.,* 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention," that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556. Here, there are many common issues of fact and law, including:

- Whether TD Bank improperly charged overdraft fees on APSN Transactions and Retry Transactions;

- Whether TD Bank breached the Business Account Agreement by assessing overdraft fees on APSN Transactions and Retry Transactions; and/or

- Whether Plaintiffs and other members of the Settlement Classes have been damaged as a result of TD Bank's alleged wrongful business practices described herein.

These common issues satisfy Rule 23(a)(2)'s commonality requirement for settlement purposes.

10

### 3.    Typicality Under Rule 23(a)(3).

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied as long as the representative plaintiff and the class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Zinberg*, 138 F.R.D. at 401. "If the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). Factual differences between class representatives and other members of the class do not preclude a finding of typicality, so long as the plaintiffs' claims arise from the same event or course of conduct and are based on the same legal theories. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3rd Cir. 2008).

Here, Plaintiffs' claims and those of Settlement Class Members arise from the same conduct. *See generally In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002). Plaintiffs' claims are typical of claims of all of the Members of the Settlement Classes, all of whom were holders of a TD Bank business checking account during the applicable time period and were assessed APSN Fees and/or Retry Fees. While Defendant has not yet had the opportunity to challenge the Plaintiffs' typicality formally in the class certification process, Plaintiffs are confident that their claims arise from the same course of events that each Settlement Class Member was subjected to, and that this same conduct caused the same injury to all of the Settlement Class Members. The typicality prong is satisfied here for settlement purposes.

### 4.    Adequacy of Representation Under Rule 23(a)(4).

Rule 23(a)(4) is also met because the Class Representatives have fairly and adequately

protected the interests of the class.  Adequacy "is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interest." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  Here, the adequacy requirement is plainly met.  In assessing the second requirement, district courts examine whether the class representative "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc*., 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006).

Here, Plaintiffs are represented by experienced counsel who have litigated this case vigorously on behalf of the Settlement Classes.  *See* Joint Decl., ¶¶ 2-3.  Indeed, the firms representing Plaintiffs have extensive general experience prosecuting consumer class actions, and extensive specific experience litigating consumer class actions against TD Bank.  *Id*.  Class Counsel has spent almost three years litigating this action.  *Id.* at ¶ 5.

Second, Class Counsel assert no conflict exists between the named and unnamed putative Settlement Classes Members because their interests are aligned.  The Class Representatives and the Settlement Class Members have all been injured by the same purported conduct.  The Class Representatives do not have any interests antagonistic to those of the other Settlement Classes Members and all Settlement Class Members share a strong interest in proving Defendant's liability.  Finally, the Class Representatives have been actively protecting the interests of the Settlement Classes.  They have engaged in the prosecution of this matter since its inception, having consistently conferred with Class Counsel, reviewed the various versions of the complaints in the case, reviewed and signed interrogatory responses, provided documents, and consulted with counsel regarding the propriety of the Settlement.  *See* ECF No. 94, pp. 24-25.

12

As a result, the adequacy requirement is satisfied for settlement purposes.

### 5. The Requirements of Rule 23(b)(3) Are Met.

Rule 23(b)(3) is satisfied when: (1) the questions of law or fact common to the class predominate over any questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Both of these requirements are met here.

#### (a) Predominance Exists.

The predominance standard requires the Court to "determine whether the common legal and factual issues are more significant than the non-common issues such that the class is 'sufficiently cohesive to warrant adjudication by representation.'" *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (quoting *Amchem*, 521 U.S. at 623). "'[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' [sic] individual position.'" *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, 2006 WL 891362, at *9 (D.N.J. April 4, 2006) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)). Predominance does not require that every relevant issue before the Court be postured identically for each and every proposed class member. *Amchem*, 521 U.S. at 623; *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999).

To determine whether common issues predominate, the underlying elements of the substantive claim must be identified. Here, Defendant's liability turns on common issues including, among other things, (1) whether the assessment of overdraft fees on debit card transactions that were authorized at a time when the business account's available balance was

13

positive, but later paid by TD Bank when the business account's available balance was insufficient to cover the transaction, violated the Parties' contract, and (2) whether the assessment of Retry Fees violated the Parties' contract. Every Settlement Class Member's claims may be proven by the same set of facts. Moreover, determining whether and to what extent Settlement Class Members were injured turns on common proof. Regardless, when common questions of law or fact predominate regarding liability, "the existence of individual questions as to damages is generally unimportant." *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008). Each element presents issues that are sufficiently cohesive and common to warrant adjudication by representation. Moreover, because this case has settled, the Court need not "consider the available evidence and the method or methods by which plaintiffs would use the evidence to prove the disputed element at trial" because there will be no trial. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (internal quotation marks and citation omitted). As a result, the predominance element is satisfied for settlement purposes.

### (b)    Superiority Exists.

The superiority prong asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule expressly sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D).

First, no members of the class expressed interest in bringing individual actions other than Plaintiffs here. Second, it is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess

relatively small claims unworthy of individual adjudication due to the amount at issue . . . [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006). A class action would be the only practical way of resolving the claims of the class members here, while at the same time, avoiding the potential for repetitious litigation and inconsistent adjudications if the claims were pursued individually. In light of the fact that each class member has a relatively small damages claim, combined with the fact that consumer class actions like this one are particularly expensive, complicated, and lengthy, this is not surprising. *See, e.g.*, *Graphite Prods.*, 2006 WL 891362, at *16 ("the relatively small purchase price of bulk extruded graphite parts would likely preclude litigating this action outside a class action"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30") (emphasis omitted). Third, multiple individual litigations create the potential for inconsistent or contradictory judgments. Fourth, a class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Because the case has settled, no manageability issues will arise. *Sullivan*, 667 F.3d at 306. Certification of the Settlement Classes will allow for efficient resolution of claims that would likely not be brought owing to prohibitive legal expenses, while at the same time preserving scarce judicial resources. Without the class action vehicle, the class would have no reasonable remedy, and Defendant would be permitted to retain the alleged improper fees. Accordingly, a class action is the best available method for the efficient adjudication of this litigation.

**B.      The Settlement Is Fair, Reasonable, and Adequate.**

The Third Circuit has recently reiterated that "[t]he approval of a class action settlement is governed by Rule 23(e)(2), which specifically requires that a district court approve a settlement agreement only 'after a hearing and on finding that it is fair, reasonable, and adequate.'"  *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (*quoting* Fed. R. Civ. P. 23(e)(2)). This Court has stated that "'the Court is required to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'"  *In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *22 (D.N.J. May 14, 2012) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)).  The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal."  *See* Fed. R. Civ. P. 23(e)(1).

The Third Circuit has directed the district courts to consider the following non-exhaustive list of "*Girsh* factors" in deciding whether to approve a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery. . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*In re Prudential*, 148 F.3d 283 at 317 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).[3]  These factors squarely support the Settlement.

_____

[3] Although Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action, the Third Circuit has continued to apply the *Girsh* and *Prudential* factors.  *See, e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019).  This Court has likewise continued to focus its analysis

1.    **The Complexity, Expense, and Likely Duration of the Litigation Favors Approval.**

The first factor assesses "the probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233. Courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Kircher's Estate*, 84 F.R.D. 1, 10-11 (D.N.J. 1979) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation").

This case has been vigorously litigated since February 2022. Without the Settlement, the parties and the Court would still be mired in this complex litigation for the foreseeable future. The relief requested in this action included monetary damages and injunctive relief. The Settlement Agreement secures substantial monetary benefits for the Settlement Classes with none of the delay, risk, and uncertainty of continued litigation. Thus, this first *Girsh* factor, standing alone, strongly favors approval of the Settlement.

2.    **The Reaction of the Class to the Settlement Favors Approval.**

The second factor "attempts to gauge whether members of the class support the settlement," *In re Prudential*, 148 F.3d at 318, with such support "creat[ing] a strong presumption . . . in favor of the Settlement." *Cendant*, 264 F.3d at 235. As discussed below, this factor strongly supports approval of the Settlement.

The deadline by which Settlement Class Members could object to or exclude themselves from the Settlement was September 14, 2024. ECF No. 94, pp. 5-7. ***One*** Settlement Class Member filed an objection and no class members opted out. *See* Supp. Dattilo Decl., ¶¶ 7-8

---

on the *Girsh* and *Prudential* factors. *E.g.*, *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *4 (D.N.J. May 3, 2022) (acknowledging same).

This Court has noted that such a response is indicative of the fairness of the Settlement, and provides further proof that it should be approved.

> These numbers amount to miniscule fractions of the Settlement Class (approximately .0005% [opt-outs] and .0001% [objections], respectively). The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.

*In re Ins. Brokerage Antitrust Litig.*, 2012 U.S. Dist. LEXIS 46496, at *69 (D.N.J. Mar. 30, 2012) (noting that a "small number of objections by Class Members to the Settlement weighs in favor of approval"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding a similarly low level of objection to be a "rare phenomenon" weighing in favor of approval).

### 3. The Stage of the Proceedings and the Discovery Completed Favor Approval.

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235. Unsurprisingly, "post-discovery settlements are more likely to reflect the true value of the claim and be fair." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

Here, Class Counsel undertook discovery that allowed it to be fully informed on the material issues before negotiating a settlement on behalf of the Settlement Classes. The parties exchanged thousands of pages of records, and responded to interrogatories and requests for production of documents. *See* Joint Decl., ¶¶ 16-17. In addition, the parties undertook a significant amount of data analysis in preparation for mediation with Judge Schneider. *Id.* at ¶ 19.

When the "negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent." *In re Elec. Carbon Prods.*

*Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006). Here, the Settlement Agreement was reached through arm's length negotiation between highly experienced counsel only after significant discovery was undertaken. Accordingly, the third *Girsh* factor strongly favors approval of the Settlement.

### 4. The Risk of Failing to Establish Liability and Damages Favors Approval.

In negotiating and reaching the Settlement Agreement, Class Counsel accounted for the difficulties and potential risks associated with proving liability and damages. *See, e.g.*, *In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *32-33. Throughout the litigation, TD has argued, *inter alia*, that it did not breach the contract and that this case is not appropriate for class certification. While Plaintiffs disagree with Defendant's arguments and have vigorously litigated against them, the arguments pose a real risk to recovery. In short, continued litigation presents additional risks, delays, and expenses that include, but are not limited to, those attendant with certifying a nationwide litigation class, defeating summary judgment and pretrial motions, prevailing at trial, defending such result on appeal, not to mention the countless other uncertainties inherent in litigation, particularly in the context of a large and complex class action.

To that end, in assessing the Settlement Agreement, the Court should balance the benefits potentially afforded to the Settlement Classes as a result of the Settlement, against the risks of continued litigation. *See In re Prudential*, 148 F.3d at 317 (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation"); *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 707 (D. Colo. 2007) (recognizing that "any class action presents complex and difficult legal and logistical issues which require substantial expertise and

resources"). In light of the risks, the fourth and fifth *Girsh* factors support approval of the Settlement Agreement.

> **5.     The Risks of Maintaining the Class Action Through Trial and the Ability of TD to Withstand a Greater Judgment Favor Approval.**

The sixth and seventh *Girsh* factors also favor approval of the Settlement. Although Plaintiffs believe that their claims are well-suited for treatment on a class-wide basis, TD would have argued that certification was inappropriate because individual issues predominate over common issues.

There is currently no evidence indicating that TD would not be able to withstand a more significant judgment. However, this factor is not dispositive. *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *35 ("Plaintiffs acknowledge that there is currently no indication that Defendant here would be unable to withstand a more significant judgment. Nevertheless, the Court is satisfied that the Settlement is fair, reasonable, and adequate, despite the possibility that Philips could pay a greater sum") (internal citations omitted). Here, the Settlement is well within the range of reasonableness and provides substantial benefits to the class. Accordingly, both the sixth and seventh *Girsh* factors favor approval of the Settlement.

> **6.     The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation Favors Approval.**

The eighth and ninth *Girsh* factors also support approval of the Settlement. The determination of a "reasonable" settlement is not susceptible to a simple mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Here, the Settlement Agreement is fair, reasonable, and represents an excellent result for the Settlement Classes. Under the Settlement Agreement, Defendant has agreed to pay $10,500,000.00 to the Settlement Classes in the form of cash payments. *See* Settlement Agreement, ¶ 62. Those

payments are designed to compensate all Settlement Class Members for the APSN Fees and Retry Fees they were charged by TD Bank.  These cash payments will automatically be made to all Participating Settlement Class Members via account credit or check after receiving approved notice of the Settlement Agreement without having to file a claim.  TD Bank has also agreed to compensate Settlement Class Members with $5,000,000.00 in reductions to the outstanding balances of Members of the Settlement Classes whose accounts were closed with amounts owed to TD Bank.  Additionally, TD's cessation of the APSN and Retry Fee practices will also financially benefit the Settlement Class Members going forward.

These results are highly favorable to the class.  The compensatory relief from the Settlement Agreement provides an immediate and sound recovery in relation to the damages potentially available and the risk of continued litigation.  Accordingly, given the size of the Settlement Classes, the potential benefits available, and the aforementioned risks in proving liability and damages and in obtaining class certification, the Settlement fairly and adequately rewards the Settlement Classes.

### C. The Notice Provided to the Class Satisfies Due Process.

 In accordance with the Court's Preliminary Approval Order, Settlement Administrator Epiq sent the Court-approved notice by email and U.S. mail to over 200,000 unique potential members of the Settlement Classes.  *See* Supp. Dattilo Decl., ¶¶ 3-4.  Epiq also established and monitored the required toll-free telephone number and comprehensive Settlement Website (https://www.tdbankapsnfeeclassaction.com).  *Id.* at ¶¶ 5-6.  Through September 24, 2024, the Settlement Website statistics show 1,409 unique visitors and 2,004 page views. *Id*. at ¶ 5. Additionally, as of the same date, the toll-free number has received 186 calls, totaling 444 minutes.  *Id.* at ¶ 6.  Accordingly, Notice Recipients have been (i) provided with direct notice of

the Settlement Agreement; (ii) fully informed of their rights and obligations under the Settlement Agreement; and (iii) provided with the resources to ask questions and, to the extent necessary, receive assistance in participating in the Settlement.

This Notice Program meets the due process requirements of Fed. R. Civ. P. 23, which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted); *In re Ikon Office Solutions, Inc*., 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).  Class Counsel look forward to the Final Approval Hearing on October 15, 2024 to answer any specific questions the Court has regarding the successful notice plan accomplished in this case, as well as any questions about the Settlement. The parties will file a proposed Final Approval Order with the Court prior to the Final Approval Hearing.

**D.    The Lone Objection Should Be Overruled.**

The lone objection to the Settlement was filed by Michael A. Norton on behalf of Lunar Computation Systems, Inc. The Lunar Computation objection identifies two reasons for its objection: (a) "my business, Lunar Computation Systems, Inc., has more of a Court identity than a market identity, the reason for that being frivolous," and (b) "the non-market identity of its founder, me – Mr. Norton –, and its business, is a violation of the 6th Ammendment [*sic*] of the U.S. Bill of Rights."  *See* Objection, p. 1 (ECF No. 98).  Respectfully, the Lunar Computation objection should be overruled for the following reasons:

First, courts have held that "[o]bjections ought to focus on the fairness, reasonableness, and adequacy of the agreement, rather than 'renegotiate terms of the settlement based on individual preferences.'" *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 491 (E.D. La. 2020) (quoting *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 152 (E.D. La. 2013)).  Lunar Computation's objection does not suggest that the Settlement is not fair, reasonable, and adequate.  Instead, it appears to claim that the fact that the Settlement Administrator sent an unsolicited notice to his regarding the case is some sort of 6th Amendment violation.  *See* Objection, pp. 1, 3

Second, the Lunar Computation objection is not sufficiently clear and unambiguous as required. Courts have held that objections must meet this threshold for consideration; otherwise the party will be deemed to have waived their objection. *E.g.*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 491; *Luevano v. Campbell*, 93 F.R.D. 68, 77 (D.D.C. 1981). Beyond its puzzling complaint about its 6th Amendment rights being violated by receiving notice about being a Settlement Class Member, the Lunar Computation objection states that he intends to call "Glenn Orton, NASA/JPL/CalTech Astronomer," "John Thompson, Astronomy & Physics Chair, University of Maine," "Todd Ehnet, Oceanographer," and "Michael J. Cavanaugh, President, NBC-Universal" as witnesses to support his objection.  *See* Objection, p. 5.   What these potential witnesses have to do with the Settlement reached in this case, or to the alleged 6th Amendment violation is unclear to say the least. Given the unclear nature of Lunar Computation's objection, it should be overruled.

Finally, Lunar Computation's objection should also be overruled because its objection lacks any evidentiary support. This is fatal to Lunar Computation's unstated belief that the Settlement is somehow unfair or insufficient. *See, e.g.*, *In re Serzone Prod. Liab. Litig.*, 231

F.R.D. 221, 233 (S.D. W. Va. 2005) (granting final approval of class action settlement where "objectors presented no evidence" to support their arguments against the settlement). Lunar Computation simply cannot offer any basis to dispute that the Settlement Agreement achieves a fair, reasonable, and adequate result for the Settlement Classes. In sum, the Lunar Computation objection should be overruled.

**CONCLUSION**

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that this Court certify the Settlement Classes, find the Settlement to be fair, reasonable, and adequate, issue final approval of the Settlement, and dismiss this action with prejudice.

DATED this 25th day September, 2024.

Respectfully submitted,

BY:  */s/ Richard M. Golomb*
Richard M. Golomb (NJ Bar No. 013181984)
**GOLOMB LEGAL P.C.**
One Logan Square
130 N. 18th Street, 16th Floor
Philadelphia, PA 19103
Telephone: (215) 985-9177
rgolomb@golomblegal.com

E. Adam Webb, Esq. (admitted *pro hac vice*)
Georgia Bar No. 743910
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
Telephone: (770) 444-9325
Adam@WebbLLC.com

Jeffrey D. Kaliel (admitted *pro hac vice*)
D.C. Bar No. 518372
Sophia Goren Gold
D.C. Bar No. 701241
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielgold.com
sgold@kalielgold.com

Joseph I. Marchese
New York Bar No. 4238317
Julian C. Diamond
New York Bar No. 5836846
Matthew A. Girardi
New York Bar No. 5857057
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
jmarchese@bursor.com
jdiamond@bursor.com
mgirardi@bursor.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Richard M. Golomb*
Richard M. Golomb