UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AMAZING FISHSTORE LLC d/b/a KRMS FARMS and WILDER MEDIA CT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | No. 1:22-CV-00958-KMW-AMD |

## **FINAL APPROVAL ORDER**

This matter is before the Court on the (1) unopposed motion for final approval of class action settlement (ECF No. 99) and (2) motion for attorneys' fees, expenses, and service awards (ECF No. 97), both filed by Plaintiffs and Class Counsel. The Court has reviewed all of the filings and evidence related to the settlement agreement and release (the "Settlement") (Exhibit 2 to ECF No. 89-2) and received comprehensive briefing and declarations. Having considered the written submissions, and after oral argument at a hearing on October 15, 2024, and for the reasons set forth on the record, **THE COURT HEREBY FINDS AND ORDERS** as follows:

### **Jurisdiction**

1. This Court has jurisdiction over the subject matter and the Parties, as well as the Settlement Class Members. Venue is also proper in this District.

### **Background**

2. Defendant TD Bank, N.A. ("TD Bank") offers business checking accounts to its customers.

3. Plaintiffs are former and current holders of TD Bank business checking accounts who allege TD Bank breached the operative accountholder contract and breached the covenant of good faith and fair dealing by assessing one or more overdraft fees for debit card transactions that were authorized at a time when a customer's available balance in their checking account was positive, but later paid by the Bank when the account's available balance was insufficient to cover the transaction(s). Plaintiffs refer to these overdraft fees as "Approve Positive, Settle Negative" ("APSN") fees. Plaintiffs also allege TD Bank breached the operative contract by assessing more than one overdraft fee or NSF fee on a debit transaction that was returned unpaid by the Bank due to insufficient funds and subsequently re-submitted by a merchant or other third party for payment and returned unpaid or paid into overdraft. Plaintiffs refer to these overdraft fees as "Retry Fees".

4. Plaintiffs sought to recover monetary damages from TD Bank for its allegedly improper business practices associated with the aforementioned policies. TD Bank denies Plaintiffs' allegations or that it did anything wrong.

5. On February 23, 2022, Plaintiffs Amazing Fishstore and Wilder Media filed a putative Class Action Complaint in this Court seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant and alleging that Defendant improperly assessed and collected certain Overdraft Fees and NSF Fees not authorized by Defendant's business account agreement ("Complaint"). *See* ECF No. 1.

6. TD Bank filed a motion to dismiss on April 6, 2022. *See* ECF No. 22.

7. On May 2, 2022, Plaintiffs filed their opposition to Defendant's motion. *See* ECF No. 28.

8. On May 9, 2022, TD Bank filed its reply brief. *See* ECF No. 31.

9. Plaintiffs also filed several notices of subsequent authority with the Court in opposition to TD Bank's request for dismissal. *See* ECF Nos. 32, 35, 37, 38, 41.

10. On December 16, 2022, the Court held oral argument on Defendant's motion to dismiss. *See* ECF No. 55.

11. The Court issued a written Order (ECF No. 56) dismissing Plaintiffs' claim for breach of the covenant of good faith and fair dealing, but denying TD Bank's motion to dismiss in all other respects. *Id.* at 1.

12. On January 13, 2023, TD Bank filed its Answer. *See* ECF No. 59.

13. On March 9, 2023, the Court conducted an initial scheduling conference and issued its Scheduling Order. *See* ECF Nos. 64, 65.

14. The Court also consolidated this matter, for discovery purposes only, with *Burns v. TD Bank, N.A.*, Case No. 1:21-cv-18194-KMW-AMD (D.N.J.).

15. Thereafter, the Parties engaged in substantial discovery. The Parties negotiated a confidentiality agreement (ECF No. 68) and ESI protocol, served and responded to written discovery, and collected, produced, and reviewed tens of thousands of pages of documents responsive to the written discovery.

16. On December 4, 2023, after the Parties had engaged in substantial discovery and reviewed detailed data analysis concerning the revenue generated by the practices challenged in this case, the Parties participated in mediation with Magistrate Judge Joel Schneider (Ret.) of Montgomery McCracken Walker & Rhoads LLP.

17. While that mediation was unsuccessful, the Parties continued their discussions in hopes of reaching a resolution of this matter on a class-wide basis.

18.     On or about January 4, 2024, the Parties reached an agreement in principle to resolve this matter and drafted and executed a terms sheet memorializing the general terms of their agreement.

19.     On March 21, 2024, Plaintiffs and Class Counsel filed their motion for preliminary approval of class action settlement (ECF No. 89).

20.     On May 17, 2024, the Court issued preliminary approval of the proposed Settlement and instructed that notice of the Settlement be distributed to Settlement Class Members (ECF No. 94).

21.     Notice was thereafter distributed to the over 200,000 Settlement Class members in accordance with the Preliminary Approval Order and the Settlement.

22.     Plaintiffs and Class Counsel filed their motion for final approval of class action settlement (ECF No. 99) on September 25, 2024, and their motion for attorneys' fees, expenses, and service awards (ECF No. 97) on August 15, 2024. One objection to the Settlement or to either of the motions was filed before the September 14, 2024 deadline set by the Court. No class members opted out.

### Settlement Terms

23.     Under the proposed Settlement Agreement, TD Bank shall provide $15,500,000.00 ("Value of the Settlement") to the APSN Fee Class and the Retry Fee Class. Of this amount, $10,500,000.00 is a cash payment that shall be used for payments to the Classes, all fees, costs, charges, and expenses of Notice and administration of the Settlement, all attorneys' fees, costs, and expenses awarded to Class Counsel (subject to this Court's approval), and all Service Awards to the Class Representatives for their work on behalf of the class. *See* Settlement Agreement, ¶

62. The Settlement Payment Amount will be apportioned between the two Classes as set forth in Paragraph 97 of the Agreement.

24. TD Bank shall also provide $5,000,000.00 in the form of reductions to the outstanding balances of those members of the Classes whose Accounts were closed with amounts owed to TD Bank ("Overdraft Forgiveness Amount"). *See* Settlement Agreement, ¶ 63. Specifically, the Overdraft Forgiveness Amount shall serve to reduce the amounts that the Settlement Class Members owe TD Bank for APSN Fees and Retry Fees the Bank paid but for which the Bank was not reimbursed. *Id.* When considering the Settlement Payment Amount and Overdraft Forgiveness Amount collectively, the Value of the Settlement is $15,500,000.00.

25. In September 2023, almost two years after Plaintiffs filed this action, Defendant discontinued assessing Overdraft Fees for business checking accounts for debit card transactions that were authorized at a time when the account's Available Balance was positive. TD Bank also discontinued charging Retry Fees for business checking accounts. The parties estimate that these practice changes will save TD Bank accountholders millions of dollars in fees in future years.

26. The amount of each Settlement Class Member's payment will be calculated pursuant to the allocation method set forth in Paragraphs 101 and 102 of the Settlement.

27. For each Settlement Class Member whose account was charged off by Defendant, the Overdraft Forgiveness Amount will be allocated using the method set forth in Paragraph 103 of the Settlement.

28. In conjunction with the Settlement, the Class will release TD Bank from all claims that were or could have been raised in this litigation, as set forth in Section XII of the Settlement.

**Class Notice**

29. Based on the declarations of Edward Dattilo of Epiq Systems, Inc. (the appointed Settlement Administrator) (ECF No. 97-2 and ECF No. 99-1), the Court finds that that the Settlement Class Members have been individually notified of the Settlement pursuant to the plan approved and directed by the Court's Preliminary Approval Order, with more than 97% of these notices being successfully delivered. The Court further finds that the notice program constituted the best practicable notice of the Settlement to the Settlement Classes under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1), Fed. R. Civ. P. 23(c)(2)(B), and 28 U.S.C. § 1715. Accordingly, the Court has jurisdiction over all Settlement Class Members for purposes of the Settlement.

### **Merit of Settlement**

30. The Court has reviewed the terms of the Settlement and noted that only one objection to the Settlement was filed. After consideration of all of the criteria set forth in Fed. R. Civ. P. 23(e)(2), as well as those set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Court finds that the Settlement is fair, reasonable, and adequate under the circumstances of this case and in the best interests of the Settlement Classes. The Court specifically finds:

(a). The appointed Class Representatives have provided outstanding representation of the Class, and treatment of this litigation as a class action for settlement purposes; the Settlement Classes, as defined below, are appropriate, proper, and satisfy the criteria set forth in Federal Rule of Civil Procedure 23(e);

(b). There has been extensive discovery conducted in this litigation, and the Parties and their counsel were thus well-informed about the relative strengths and weaknesses of their positions and well-positioned to determine the reasonableness of the Settlement;

(c). The terms of the Settlement provide substantial, direct, and prompt cash

payments to the Settlement Classes via a methodology that is simple and straightforward;

(d). Class Counsel have zealously represented the Class, are experienced practitioners with significant experience in class action litigation, and have recommended approval of the Settlement;

(e). The future expense and likely duration of the litigation, its uncertainty of outcome, and the range of recovery if the litigation were to proceed support approval of the Settlement;

(f). The risks of establishing liability, establishing damages, and maintaining the class action through the trial were great;

(g). Nothing indicates an absence of good faith or independence by Plaintiffs, Class Counsel, or TD Bank in negotiating the Settlement and indeed the Settlement was reached without collusion or fraud and at arm's length with the assistance of an experienced mediator;

(h). One member of the Settlement Classes has objected to the Settlement;

(i). The Settlement treats the members of the Settlement Classes equitably relative to each other; and

(j). The settlement fund is well within the range of reasonableness in light of the best possible recovery.

31. The Court thus hereby finally approves in all respects the Settlement and finds that the Settlement's terms for allocating and distributing the settlement fund are in all respects fair, reasonable, and adequate, and are in the best interests of the Settlement Classes.

### Certification of Settlement Classes

32. The Court reaffirms its prior certification of the Settlement Classes, consisting of:

> All holders of a TD Bank business checking account, who from February 23, 2016 to and including September 30, 2022, incurred one or more overdraft fees for a

debit card transaction that was authorized at a time when the account's available balance was positive, but later paid by the Bank when the account's available balance was insufficient to cover the transaction ("APSN Fee Class").

and

All holders of a TD Bank business checking account, who from February 23, 2016 to and including September 30, 2022, incurred more than one overdraft fee or NSF fee on a debit transaction that was returned unpaid by the Bank due to insufficient funds and subsequently re-submitted by a merchant or other third party for payment and returned unpaid or paid into overdraft ("Retry Fee Class").

33. Excluded from the Settlement Classes are TD Bank; all Settlement Class members who properly exclude themselves from the Settlement; and all judges assigned to this litigation.

34. The Court reaffirms that the Settlement Classes meet all the requirements of Federal Rule of Procedure Rule 23(a) and (b)(3), for settlement purposes, namely that the Settlement Classes are so numerous that joinder of all members is impractical; that there are common issues of law and fact; for purposes of settlement only, that the claims of the Class Representatives are typical of absent members of the Settlement Classes; that the Class Representatives and Class Counsel have and will fairly and adequately protect the interests of the Classes; for purposes of settlement only, that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

35. Plaintiffs Amazing Fishstore LLC d/b/a KRMS Farms and Wilder Media CT have adequately represented the Settlement Classes and are appointed as Class Representatives.

36. KalielGold PLLC and Webb, Klase & Lemond, LLC have adequately represented the Settlement Classes and are appointed as Class Counsel.

### **The Lone Objection Is Overruled**

37. The lone objection to the Settlement was filed by Michael A. Norton on behalf of Lunar Computation Systems, Inc. *See* ECF No. 98. The Lunar Computation objection identifies

two reasons for its objection: (a) "my business, Lunar Computation Systems, Inc., has more of a Court identity than a market identity, the reason for that being frivolous," and (b) "the non-market identity of its founder, me – Mr. Norton –, and its business, is a violation of the 6th Ammendment [*sic*] of the U.S. Bill of Rights." *See* Objection, p. 1. The Lunar Computation objection is overruled for the following reasons:

    a.    First, Lunar Computation's objection does not suggest that the Settlement is not fair, reasonable, and adequate. Instead, it appears to claim that the fact that the Settlement Administrator sent an unsolicited notice regarding the case is some sort of 6th Amendment violation. *See* Objection, pp. 1, 3. Courts have held that "[o]bjections ought to focus on the fairness, reasonableness, and adequacy of the agreement, rather than 'renegotiate terms of the settlement based on individual preferences.'" *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 491 (E.D. La. 2020) (quoting *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 152 (E.D. La. 2013)). Because the objection does not establish that the Settlement is not fair, reasonable, and adequate, it provides no basis to reject the Settlement.

    b.    Second, the Lunar Computation objection is not sufficiently clear and unambiguous as required. Courts have held that objections must meet this threshold for consideration; otherwise the party will be deemed to have waived their objection. *E.g., In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 491; *Luevano v. Campbell*, 93 F.R.D. 68, 77 (D.D.C. 1981). Beyond its puzzling complaint about its 6th Amendment rights being violated by receiving notice about being a Settlement Class Member, the Lunar Computation objection states that Mr.

9

        Norton intends to call "Glenn Orton, NASA/JPL/CalTech Astronomer," "John Thompson, Astronomy & Physics Chair, University of Maine," "Todd Ehnet, Oceanographer," and "Michael J. Cavanaugh, President, NBC-Universal" as witnesses to support his objection. *See* Objection, p. 5. What these potential witnesses have to do with the Settlement reached in this case, or to the alleged 6th Amendment violation is unclear to say the least. Given the unclear nature of Lunar Computation's objection, it is overruled.

    c.    Finally, Lunar Computation's objection should also be overruled because its objection lacks any evidentiary support. This is fatal to Lunar Computation's unstated belief that the Settlement is somehow unfair or insufficient. *See, e.g.*, *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 233 (S.D. W. Va. 2005) (granting final approval of class action settlement where "objectors presented no evidence" to support their arguments against the settlement). Lunar Computation has not offered any basis to dispute that the Settlement Agreement achieves a fair, reasonable, and adequate result for the Settlement Classes.

## Attorneys' Fees, Expenses, and Service Awards

38.    <u>Attorneys' Fees</u>: The Court hereby grants to Class Counsel a fee in the amount of $4,650,000.00, which the Court finds to be fully supported by the facts, record, and applicable law. This amount shall be paid from the Settlement Fund.

39.    The Court finds that TD Bank reserved the right to oppose Class Counsel's request for attorneys' fees and for reimbursement of costs and expenses. However, TD Bank chose not to object after seeing Class Counsel's motion.

10

40. The requested fee is justified under the percentage-of-the-recovery method, which the Third Circuit has recommended be applied to common fund cases such as this matter. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 (3d Cir. 2011) (*en banc*); *Beltran v. SOS Ltd.*, 2023 WL 319895, at *7-8 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023).

41. The fee represents thirty percent (30%) of the Value of the Settlement and does not include the value of the practice changes adopted by Defendant. The Court finds the request to be reasonable and consistent with awards in similar cases in this Circuit and in other courts. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (finding an approximately 33% fee award of a $44.5 million settlement fund to be reasonable when compared with recovery percentages in other class actions); *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *22 (D.N.J. Oct. 13, 2010) (multiple factors, including "the fact that several courts in similar matters have awarded fees in this amount" warranted approval of one-third fee); *In re TD Bank Debit Card Overdraft Fee Litig.*, No. 6:15-MN-02613, ECF No. 233 (D.S.C. Jan. 9, 2020) (30% of settlement value that included cash and debt forgiveness); *In re: Checking Account Overdraft Litig. (Commerce Bank)*, No. 1:09-MD-02036-JLK, 2013 WL 11319243, *5-*6 (S.D. Fla. Aug. 2, 2013) (including settlement value $18.3 million in cash and a change in practice with value of $4.9 million).

42. In approving the requested fee, the Court has carefully considered the factors listed in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998), namely:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of

11

nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

and

(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement,

See In re AT&T Corp., 455 F.3d 160, 165-66 (3d Cir. 2006) (citing the *Gunter* and *Prudential* factors). The record shows that these directly support the requested fee.

43.     Expenses. The Court hereby grants to Class Counsel the requested reimbursement of $45,884.25 in litigation expenses they have incurred during the prosecution of this case. This expense award is fully supported by the Settlement, the facts, the record, and the applicable law. *E.g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004).

44.     Service Awards. The Settlement allows Class Counsel to request a service award to the Class Representatives of up to $5,000 each for their service. Courts often grant service awards "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *20 (D.N.J. May 14, 2012); *McLennan v. LG Elecs. USA, Inc.*, 2012 WL 686020, at *1 (D.N.J. Mar. 2, 2012). The Court finds that payment of these service awards is warranted and approved in this case in light of the Class Representatives' substantial work on behalf of the Settlement Classes and the risks they took in bringing suit.

45.     The awarded fees and expenses shall be paid to Class Counsel and the service awards shall be paid to the Class Representatives in accordance with the terms of the Settlement.

### Releases

46. Pursuant to, and as more fully described in Section XII of the Settlement, as of the Effective Date of the Settlement Agreement, the releasing parties shall be deemed to have and, by operation of this Order and the separately issued Final Judgment shall have, fully and irrevocably released and forever discharged the released parties from the claims identified in paragraphs 108 and 109 of the Settlement.

### Cy Pres

47. In the event that there are any residual funds in the Settlement Fund Account after the distributions required by Section XI of the Agreement, such funds shall be distributed to Settlement Class members who have not opted out and are Current Account Holders or who previously cashed their checks through a secondary, pro-rata distribution of the residual less the cost of the secondary distribution. If a secondary distribution is not economically reasonable, the funds may be distributed to a *cy pres* program as agreed on by the Parties and submitted to the Court for approval in accordance with Section XI of the Settlement.

48. No Class Representative or member of the Settlement Classes who has not opted out, either directly, representatively, or in any other capacity, shall commence, continue, or prosecute any action or proceeding in any court or tribunal asserting any of the claims that have been released under the Settlement, and they are hereby permanently enjoined from so proceeding, including during the pendency of any appeal from this Order or the Final Judgment.

49. Without affecting the finality of this Order and the separately issued Final Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement and of this Order, to protect and effectuate this Order and Final Judgment, and for any other necessary purpose. The Class Representatives, Defendant, and each member of the Settlement Classes who has not opted

out (including any objectors) are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement, including the exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Order and Final Judgment, the Court retains exclusive jurisdiction over any such suit, action, or proceeding. Solely for purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, the Parties hereto are deemed to have irrecoverably waived and agreed not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

### Use of this Order

50. That the Parties have reached a Settlement and participated in proceedings related to the Settlement should not be (a) offered or received as evidence of a presumption, concession, or an admission by any party, (b) offered or received as evidence of a presumption, concession, or any admission of any liability, fault, or wrongdoing; provided, however, that reference may be made to the Settlement as may be necessary to effectuate or enforce its provisions.

51. In the event that the Settlement does not become effective according to its terms, this Order and Final Judgment shall be rendered null and void as provided by the Settlement, shall be vacated, and all orders entered and releases delivered in connection with the Settlement shall be null and void to the extent provided by and in accordance with the Settlement.

### Conclusion

52. For the reasons set forth herein, the Court hereby (a) GRANTS final approval of the Settlement; (b) AFFIRMS its prior certification of the Settlement Class pursuant to Fed. R.

Civ. P. 23(b)(3) and (e) for settlement purposes; (c) finds the notice satisfied the requirements of Rule 23, due process, and all other legal requirements; and (d) approves Class Counsel's requests for attorneys' fees of $4,650,000.00, expenses of $45,884.25, and service awards of $5,000 to each of the Class Representatives. This Order resolves all issues in this lawsuit as between all parties and therefore constitutes a final judgment. Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter Final Judgment dismissing this Action with prejudice in a separate document. The judgment shall dismiss this Action with prejudice as to all parties and Settlement Class Members who have not opted out of the settlement, each side to bear its own fees and costs except as otherwise provided in the Settlement Agreement and this Order.

53.     The Parties and the Settlement Administrator are directed to carry out the Settlement according to its terms.

**IT IS SO ORDERED**, this the 15th day of October, 2024.

Hon. Karen M. Williams
United States District Judge